METAL MARKETPLACE, INC.

v.

UNITED PARCEL SERVICE, INC.

Civ. A. No. 88–7669.

United States District Court,
E.D. Pennsylvania.

March 16, 1990.

Stacey L. Schwartz, Schwartz & Blackman, Philadelphia, Pa., for plaintiff.

Steven D. Shadowen, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## MEMORANDUM

WALDMAN, District Judge.

Presently before the court is defendant's motion for sanctions, including reimbursement for all fees and costs of litigation and dismissal with prejudice, and for summary judgment. The parties were given an opportunity to be heard on February 23, 1990. For the reasons stated herein, summary judgment will be granted, and limited sanctions will be imposed.

### I.

The relevant facts, construed in a light most favorable to plaintiff, are as follows. Plaintiff Metal Marketplace, Inc. ("Metal Marketplace") is a Pennsylvania corporation engaged in the business of wholesale jewelry. In April 1988, plaintiff contracted with defendant United Parcel Service, Inc. ("UPS") to ship two parcels of jewelry from Philadelphia to a Metal Marketplace customer in Texas. Metal Marketplace sent the jewelry "collect on delivery" ("C.O.D.") and indicated "Cash Only" on the UPS shipper receipt.

UPS delivered the parcels to the correct party at the correct address. UPS then collected two facially-valid cashier's checks in the amount of $20,484.70 and $16,703.69 from the buyer, made payable to Metal Marketplace. After receiving the two cashier's checks from UPS, Metal Marketplace learned that they were counterfeit. Metal Marketplace thereafter filed the present suit, asserting that UPS had breached the "cash only" provision of the C.O.D. contract by collecting cashier's checks rather than currency. Metal Marketplace seeks recovery of the cost of the jewelry plus interest.

### II.

The defendant has submitted numerous exhibits obtained during discovery which reveal that in the nine-month period prior to the shipment at issue here, Metal Marketplace accepted from UPS cashier's checks, certified checks, or money orders in lieu of currency on at least seventy (70) occasions. Defendant also has submitted an uncontested affidavit that plaintiff never complained about receiving such forms of payment on those or any other occasions.

Defendant contends that such an extensive prior course of dealing establishes conclusively that the parties intended the term

"cash only" to encompass instruments other than strictly currency. Moreover, even if this were not so, defendant argues that plaintiff's failure to object on 70 earlier occasions effectively estops it from now asserting a cause of action for defendant's acceptance of cashier's checks on this occasion.

### III.

■ A motion for summary judgment will be granted if the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Whether such a genuine issue exists is determined by whether the evidence is such that the factfinder could find reasonably in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ On a summary judgment motion, the moving party bears the initial burden of identifying for the court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Following such a showing by a defendant-movant, the plaintiff cannot rest solely on mere conclusory allegations found in the complaint. Instead, plaintiff must by affidavits or by the depositions and admissions on file "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Id.* at 322, 106 S.Ct. at 2552.

■ In support of its contention that a genuine issue of material fact remains, plaintiff cites to an affidavit of December 22, 1989, by its general manager, Jeffrey Orner. Mr. Orner states that to the best of his knowledge plaintiff had not accepted a cashier's check in lieu of "cash" prior to the transaction in question. This is not really an assertion of fact. Assuming that it is, however, it is not one that gives rise to a meaningful dispute. It is not inconsistent that UPS may have accepted cashiers checks on behalf of the plaintiff corporation of which Mr. Orner was personally unaware.[1]

The defendant has produced voluminous documentary evidence of unquestioned authenticity, obtained during discovery from plaintiff's business records, to show that plaintiff had accepted cashier's checks for "C.O.D.—Cash Only" deliveries by defendant on numerous prior occasions. A jury could not reasonably find that such checks were not accepted on the basis of Orner's stated ignorance of that fact. The court concludes that a genuine issue of fact as to the parties' course of dealing and understanding regarding "C.O.D.—Cash Only" deliveries does not exist.

### IV.

■ When interpreting the terms of a contract, a court's overriding purpose is always to effectuate the intent of the contracting parties. *Lower Frederick Township v. Clemmer*, 518 Pa. 313, 329, 543 A.2d 502 (1988). Critical evidence in determining intent is the parties' prior course of

---

**1.** In his affidavit, filed after defendant moved for summary judgment, Orner also states that he believed that UPS would only accept currency when "cash only" is noted, in part, because of conversations he had with UPS representatives. He does not state what conversations were had, or when or with whom. Most importantly, Orner's statement is flatly contradicted in his deposition of October 11, 1989, before service of the motion for summary judgment, wherein he states that he had no prior conversation with any UPS representative concerning their "C.O.D.

—Cash Only" procedures. (Orner Dep. pp. 36–37.)

A party opposing summary judgment cannot create a genuine issue of fact by contradicting his own prior sworn statement. *Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406, 1410 (9th Cir. 1987). This is especially so where a sudden, unexplained revision of testimony occurs, or else a party virtually always could defeat a motion for summary judgment. *Wilson v. Westinghouse Electric Corp.*, 838 F.2d 286, 289 (8th Cir.1988).

dealing under like contracts. *Restatement (Second) of Contracts* § 223.

■ Here, the evidence of the parties' prior course of dealing is determinative. Prior to the incident in question, Metal Marketplace had repeatedly accepted from UPS cashier's checks, certified checks, and money orders for C.O.D. shipments with instructions to accept "cash only." This occurred on at least 70 previous occasions over the nine months preceding the one at issue. Accordingly, the parties' prior course of dealing clearly demonstrates an understanding that the term "cash only" in their C.O.D. shipment agreements contemplated cashiers checks and other monetary instruments commonly accepted as the equivalent of cash.

Plaintiff contends that the parties' intent is ultimately a question of fact that should be left to a jury. Plaintiff, however, has presented no evidence to suggest that the parties intended the term "cash only" to mean "currency only." On this record, it would not be reasonable to conclude that the parties contemplated that the UPS delivery man would accept only currency in whatever denominations the purchaser might tender. No reasonable jury could find in favor of the plaintiff based on the evidence relating to the parties' prior course of dealing.

Several courts have held as a matter of law that, absent an express provision to the contrary, the term "cash only" includes by implication certain negotiable instruments other than currency. *See Karat Gold Imports, Inc. v. United Parcel Service, Inc.,* 1989 WL 98764, 1989 Ohio App. LEXIS 3295 (August 24, 1989) (cashier's checks); *H & Y Electrical Supply Co. v. United Parcel Service, Inc.,* No. 88–CO–1631 (Dist. Ct.Ky., July 12, 1988) (money order); *Leen-et Jewelry Corp. v. United Parcel Service, Inc.,* 1987 Fed. Carrier Cases (CCH) ¶ 83,312 (N.Y.Civ.Ct.1987) (cashier's checks). *See also Isler v. Fisher,* No. 89 Civ. 0317, 1989 WL 94341, 1989 U.S. Dist. LEXIS 9082 (S.D.N.Y. August 4, 1989) (well established that cashiers check is equivalent of cash); *Armstrong v. U.S.,* 171 F.Supp. 835, 838 (E.D.Pa.1959) (Van Dusen, J.) (certified check clearly equivalent of cash); *County of Allegheny v. Slavicek,* 116 P.L.J. 338, 340 (Pa.Ct.Comm. Pl.1967) (Aldisert, J.) (certified check equivalent to cash).

■ The conclusion reached by these courts is based on the quite sensible notion that a certified or cashier's check is regarded and accepted widely in the commercial world as the equivalent of cash. *See J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code,* § 17–5, ¶ 681 n. 10 (2d ed.1980) (public treats cashier's checks as cash equivalent); *Restatement (Second) of Agency* § 426, comment d (1958). Even when a commercial contract term reasonably is susceptible to more than one interpretation or is vague, a definitive meaning may be ascertained from common practice or understanding in the business world. *See Gregg v. U.S. Industries, Inc.,* 715 F.2d 1522, 1536 (11th Cir.1983); *In re Bristol Associates, Inc.,* 505 F.2d 1056, 1062 (3rd Cir.1974).

Plaintiff relies principally upon a comment that "… while a cashier's check is equivalent to a negotiable promissory note of a bank, it is not the same as cash …" made in *TPO, Inc. v. Federal Deposit Insurance Corp.,* 487 F.2d 131, 136 (3rd Cir. 1973). In *TPO,* the Court held that a bank need not honor a cashier's check obtained by the payee-holder by fraud in which there was complicity by the issuing bank. The Court's comment must be read in this context. The Court in *TPO* never held that the term "cash" did not contemplate or include a cashier's check in the context of routine commercial contracts or business transactions.

As the Court in *TPO* recognized, a cashier's check is irrevocable in the hands of a payee-holder in due course. *TPO,* 487 F.2d at 136 n. 3. It is for this reason that a cashier's check is the functional equivalent of cash in the world of commerce. *See Da Silva v. Sanders,* 600 F.Supp. 1008, 1013 (D.D.C.1984). The *TPO* holding has been viewed as a limited exception to the general rule of the unrestricted negotiability of cashier's checks. *See id.* at 1013 n. 13.

Indeed, as it made clear in its opinion on a petition for rehearing, the Circuit Court so viewed its holding. *See TPO*, 487 F.2d at 137 n. 1.

■ That the cashier's checks in the instant case, authentic in appearance, were later determined to have been faked without the prior knowledge or connivance of the payee or UPS does not remove them from the general rule of cash equivalency. UPS could have obtained currency from the consignee which upon examination was found to be counterfeit.

Requiring payment in the form of currency exclusively often would be burdensome. Consignees would be required to have on hand huge amounts of currency to pay for routine deliveries. Such a requirement could have an inhibiting effect on a variety of routine commercial transactions.

Plaintiff cites to only one commercial contract case in which a court held that a cashier's check is not equivalent to cash. The court in that case opined that UPS had breached a "C.O.D.—Cash Only" delivery contract as a matter of law when it accepted a cashier's check. *See Streiff Jewelry Co., Inc. v. United Parcel Service, Inc.*, 670 F.Supp. 341, 342–43 (S.D.Fla.1987), *opinion withdrawn, vacated and dismissed on other grounds*, 679 F.Supp. 7 (S.D.Fla.1988). The court finds the *Streiff* case to be unpersuasive in view of contrary authority and universally recognized practices in the commercial world, and distinguishable given the prior course of dealings between the parties in the instant case. Also, assuming *arguendo* that the *Streiff* court's interpretation of "cash only" was correct as of the date of its opinion, the UPS tariff on file with the Interstate Commerce Commission has since been amended to provide the following terms and conditions of service:

Consignee's Checks in Payment of C.O.D.'s:

Unless instructions to collect cash only are written on the C.O.D. tag, the carrier will accept a check issued by or on behalf of the consignee. When instructions to collect cash are written on the C.O.D. tag, the carrier reserves the right to accept cash, cashier's check, certified check, money order or other similar instrument issued by or on behalf of the consignee. All checks (including cashier's checks and certified checks) and money orders tendered in payment of C.O.D.'s will be accepted by the carrier at shipper's risk including, but not limited to, risk of non-payment and forgery, and carrier shall not be liable upon any such instrument. . . .

These terms and conditions of service are binding on Metal Marketplace, as they are on all who ship goods via UPS. *See Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 342–43, 102 S.Ct. 1815, 1820, 72 L.Ed.2d 114 (1982). Therefore, even if there was some question about the meaning of "cash only" prior to the *Streiff* opinion, that ambiguity has since been clarified by inclusion of this language in UPS's tariff.

### V.

■ Finally, even if the parties had intended the term "cash only" to mean "currency only," plaintiff clearly had ratified any breach of the "cash only" provision with its acceptance of other negotiable instruments on at least 70 recent prior occasions. As such, plaintiff would be equitably estopped from now asserting that its contract with defendant required the payment of currency exclusively. In light of plaintiff's prior acquiescence, defendant's reliance on this occasion was neither unreasonable nor violative of any duty to inquire about the form of payment required. *See Straup v. Times Herald*, 283 Pa.Super. 58, 71, 423 A.2d 713 (1980); *Stolarick v. Stolarick*, 241 Pa.Super. 498, 509, 363 A.2d 793 (1976).

It may be true, as plaintiff contends, that the particular UPS personnel involved with this delivery may have been unaware of plaintiff's prior dealings with UPS when they accepted cashier's checks from the Texas consignee. It does not follow, however, that UPS did not implicitly rely on plaintiff's previous acquiescence. Had plaintiff objected on any one or more of 70 earlier occasions, UPS could have con-

formed its conduct to plaintiff's wishes or declined to handle plaintiff's shipment. In either event the present dispute would have been avoided.

## VI.

■ The court concludes that absent an express provision to the contrary, the term "cash" in the context of a routine commercial contract includes a cashier's check. This conclusion is particularly compelling when, as in the instant case, the term is expressly defined to include cashier's checks in the contracting party's public tariff.[2]

Moreover, even if the term were ambiguous and reasonably susceptible to two meanings, all of the extrinsic evidence produced supports the interpretation urged by the defendant. Given the course of dealings between the parties pursuant to identically worded contracts on at least 70 prior occasions, the parties clearly manifested their understanding of the term to include cashier's checks. If that was not plaintiff's understanding, then at a minimum it led defendant reasonably to rely on this interpretation and now would be estopped from asserting otherwise.

There is no dispute as to any material fact. No jury reasonably could find for the plaintiff on the record in this case, and defendant is entitled to judgment as a matter of law.

Accordingly, defendant's motion for summary judgment will be granted.

## VII.

Defendant requests sanctions, including dismissal with prejudice, against plaintiff on the ground that plaintiff concealed or withheld critical evidence during discovery. This evidence consists of invoices and computerized information which reflects the parties' prior course of dealing, and which in fact is highly probative.

The following facts are uncontroverted on the record before the court. The documents in question are within the scope of document request no. 6, served by defendant on plaintiff on March 17, 1989 pursuant to Fed.R.Civ.P. 34 and ordered to be produced by the court on August 4, 1989. If plaintiff or its counsel had any doubt about this, they easily could have and should have resolved it by resort to the court.

Plaintiff's counsel advised defense counsel on August 18, 1989, that he was advised by his "client" that there were no unproduced documents within the scope of the court's order. At his deposition on October 11, 1989, Orner made statements that caused defense counsel to believe that in fact such documents did exist. After an exchange between counsel, it was agreed that defense counsel could conduct a search at plaintiff's premises for invoices and computer data of the type requested. Over a three-day period from November 1, 1989, two defense lawyers reviewed plaintiff's files. On the third day, they were joined by two others. The documents in question were discovered and copied.

■ Federal Rule of Civil Procedure 37(b) authorizes the imposition of sanctions for failure to comply with a discovery order. Such sanctions should be applied with diligence not only to penalize those whose conduct warrants it but also to deter the offending party and others from engaging in such conduct in the future. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763–4, 100 S.Ct. 2455, 2462–63, 65 L.Ed.2d 488 (1980). Rule 37(b)(2) mandates that the court require the disobedient party and/or his attorney to pay the reasonable expenses incurred by the innocent party because of the failure of the former to comply with a discovery order unless the failure was substantially justified or would otherwise be unjust. In making that determination, the court must consider several factors, including the extent of the offend-

---

2. The court finds unpersuasive plaintiff's argument that while the term "cash" may encompass cashier's checks, "cash only" does not. The term "cash only" must be read as meaning that only "cash" would be accepted. Thus, if "cash" connotes currency plus certain negotiable instruments commonly accepted in the commercial world in lieu of currency, so does "cash only."

982

ing party's responsibility, other dilatory conduct, the party's motive or state of mind, prejudice to the innocent party and the appropriateness of alternative sanctions. *See Ali v. Sims,* 788 F.2d 954, 957 (3rd Cir.1986).

 Plaintiff is responsible for the failure to produce these documents. Counsel stated that he reviewed defendant's document and other discovery requests with his client's official representative and explained to him plaintiff's obligations. The documents were on plaintiff's premises and readily discoverable. Plaintiff's counsel and his client were aware of defendant's theory of the case and, in light of it, of the obvious potential importance of the kind of notations found on these documents. This certainly was clear no later than June 8, 1989. (*See* defendant's Exhibit G.)

This is not the only matter in which plaintiff appears to have been less than conscientious in fulfilling its discovery obligations. Plaintiff's representative stated in response to interrogatories that plaintiff had no recordings of conversations with any employee or agent of defendant when in fact, as later revealed, it did. That this response may not have reflected sloppiness as much as concern that such recording may have been done in violation of applicable state law would not excuse plaintiff's dereliction in fulfilling its discovery responsibilities. Further, plaintiff's officially designated corporate representative answered key questions based on his own personal knowledge without undertaking the type of inquiry or investigation contemplated by Fed.R.Civ.P. 30(b)(6).

Defendant strenuously contends that the actions or inactions of plaintiff and its counsel were in bad faith, stressing the critical nature of the documents withheld. The court concludes that plaintiff clearly was very dilatory and unconscientious in meeting its discovery obligations, but the court will not impute bad faith to it.

The court believes that greater diligence by plaintiff's counsel could have mitigated the effect of plaintiff's conduct. Counsel certainly was aware of the notation on the invoice for the transaction at issue and, with an appropriate line of inquiry, might well have caused his client to surface these documents earlier. Instead, counsel assured his adversary that there were no unproduced discoverable materials. The court, however, will not impute bad faith to counsel and concludes that there is not sufficient reason of record to warrant the imposition of sanctions on him.

Because defendant ultimately obtained these documents and secured summary judgment based, in large part, upon them, it was not substantially prejudiced. Defendant, however, did expend some effort and money that it would not have, had plaintiff timely and properly addressed its discovery responsibilities. Moreover, the absence of substantial prejudice due, at least in part, to fortuitous developments does not obviate the need to deter such conduct as contemplated by the Supreme Court in *Roadway Express, supra.* That consideration, however, more properly goes to the nature and extent of the sanctions to be imposed.

The court concludes that the most appropriate sanction in this instance would be to require plaintiff to pay to defendant the reasonable expenses it incurred because of the trip by defense counsel during which they located the documents in question. Of all of the possible sanctions, this is the most modest and the least that Rule 37(b)(2) would appear to mandate.

As a bald proposition, it may be true that counsel generally would welcome an opportunity to roam through the opposing party's premises. On this record, however, the court concludes that but for plaintiff's wanton failure to sift through its own records and produce these 70 documents, defense counsel would not have needed to undertake and would not have undertaken this effort. The court will not require plaintiff to pay for all hours expended by counsel since some of them were spent reviewing and copying the relevant documents. This is something that defense counsel would have done had the documents been timely and properly produced.

The court will direct plaintiff to compensate defendant for the reasonable expenses incurred and for reasonable fees paid for

the hours expended by defense counsel in actually searching for the documents in question.

An appropriate order will be issued.