(13 P.3d 917)

No. 83,833

DIANE CAMPBELL, Administratrix of the Estate of Shawn Perryman, Deceased, *Appellant,* v. CITY OF LEAVENWORTH, KANSAS, OFFICER TODD A. BLEDSOE, OFFICER ROGER M. HUNDLEY, and OFFICER JEFFREY L. DOWNING, *Appellees.*

Opinion filed November 3, 2000.

*H. Reed Walker*, of Mission, for the appellant. ·

*James D. Conkright* and *Linda S. Skaggs*, of Sanders Conkright & Warren, of Kansas City, Missouri, for the appellees.

Before Pierron, P.J., Lewis, J., and Paul E. Miller, District Judge, assigned.

Lewis, J.: In September 1995, police officers employed by the City of Leavenworth shot and killed Shawn Perryman. The administratrix of his estate brought an action under 42 U.S.C. § 1983 (1994) and common-law negligence, alleging that the City of Leavenworth was liable for Perryman's wrongful death. It was the contention of the administratrix that the officers had used excessive force in shooting and killing Perryman and were negligent in the performance of their official duties. The trial court granted summary judgment to the defendants, and the administratrix has appealed from that decision.

The facts on which the trial court granted summary judgment were uncontroverted. The unfortunate chain of events resulting in Perryman's death began when Coleen Brown reported to the Leavenworth police that Perryman had stolen her car. Brown was a friend of Perryman, and both had recently been released from the Osawatomie State Hospital. The police responded to Brown's report and found her automobile at a nearby convenience store.

A short time after the car was located, the Leavenworth officers found Perryman near St. John's Hospital and St. Mary's College in Leavenworth. When he saw the police officers, he ran in a direction

towards St. Mary's College. Officers then observed him running towards the hospital.

As the officers watched Perryman's retreat, they noticed that he had a large metal object in his hand, and they immediately began to tell him to drop the object. One of the officers told Perryman that they simply wanted to talk to him. They set up a triangle around Perryman and allowed him to retreat up a hill towards the hospital as they attempted to get him to surrender. At one point as he fled, Perryman shouted at the officers, "Fucking shoot me." He also stated, "You're going to have to kill me or I'll kill you," and he said, "I want to die."

Despite the counsel of the police officers, Perryman continued to look over his shoulder and refused to surrender. At one point he stopped and held the large metal object upward and flailed it about in front of him and lashed out in the direction of the officers. At that point, Officer Todd A. Bledsoe sent his police dog to subdue Perryman, but Perryman refused to surrender, stabbing at the dog, who apparently retreated.

The officer sent the dog at Perryman a second time and, at this point, he charged towards Officer Bledsoe with the large metal object held in a threatening position. At a point when Perryman was approximately 8 feet away from Officer Bledsoe with the weapon held over his head, the police officer shot Perryman two times and killed him. Another of the officers at the scene, Officer Roger M. Hundley, had made a decision to fire his weapon when Perryman charged at Officer Bledsoe, but indicated he could not do so because another police officer was in his line of fire. The other officer, Officer Jeffrey L. Downing, also made a decision to fire, but just as he began to squeeze the trigger on his handgun, he heard the shots from Officer Bledsoe's gun.

Perryman's death was investigated by the Kansas Bureau of Investigation and the Leavenworth County Attorney's office, which both concluded that the use of deadly force in this instance was justified under K.S.A. 21-3215. The Leavenworth Chief of Police indicated that he believed the officers involved "[u]tilized only the force necessary to overcome the aggressive resistance of Perryman."

In the action filed against the defendants, the plaintiff alleged that the three police officers, Bledsoe, Hundley, and Downing, and the City of Leavenworth, had violated Perryman's constitutional rights and negligently performed their duties.

The plaintiff's expert was a professor of criminology, Dr. George Kirkham. Dr. Kirkham testified that he did not believe that the officers had followed acceptable law enforcement procedures. It was his opinion that the officers made no attempt to diffuse the situation and caused the use of excessive deadly force. He believed that the officers failed to use alternatives which were available to them, such as the more effective use of the dog or of their batons.

After discovery was completed, the defendants filed a motion for summary judgment which was ultimately granted by the trial court.

Our standard of review on summary judgment is well known:

"Summary judgment is appropriate when the pleading[s], depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

## UNREASONABLE USE OF DEADLY FORCE

The plaintiff pursued this action under 42 U.S.C. § 1983 (1994). That statute only applies when the defendant acts under color of state law. *Monroe v. Pape*, 365 U.S. 167, 184, 5 L. Ed. 2d 492, 81 S. Ct. 473 (1961), *overruled on other grounds Monell v. New York Dept. of Social Services*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). We also note that § 1983 only creates a cause of action for violation of federal rights. See *Monroe*, 365 U.S. at 180. In addition, the defendants in this case are law enforcement officers, and in those instances, as a general rule, the plaintiff must over-

come the qualified immunity exception. See *Pierson v. Ray*, 386 U.S. 547, 557, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967).

The question is whether the officers violated Perryman's Fourth Amendment rights by using excessive force. That is a question of fact and in analyzing the evidence, the court must determine whether the officers' actions were objectively reasonable in the light of the facts and circumstances surrounding those actions. *Swinehart v. City of Ottawa*, 24 Kan. App. 2d 272, 278, 943 P.2d 942 (1997). There are a number of facts which need to be examined to determine reasonableness, including the severity of the crime involved, whether the decedent posed an immediate threat to the safety of the officers, and whether the decedent was resisting arrest. Of course, if there is a material issue of fact concerning the use of excessive force, then summary judgment would not be appropriate. See 24 Kan. App. 2d at 278-79.

In this case, it appears clear to us that Perryman posed an immediate threat to the safety of the officers. He ran at Officer Bledsoe with a sharp metal object held over his head, which has been described as a large barbecue fork, and got within 8 feet of Officer Bledsoe before that officer fired his revolver at the decedent. The decedent not only posed an immediate threat to Officer Bledsoe, he was also resisting arrest and we do not believe there to be any question that the officers were justified in the force used. We believe it shows considerable courage to allow someone to come within 8 feet of your person before taking steps to protect your own life.

It is plaintiff's position that there was a material issue of fact in this case as to whether the force used was excessive or reasonable. The plaintiff cites in support of her proposition the case of *Sevier v. City of Lawrence*, 853 F. Supp. 1360 (D. Kan. 1994). In that case, the officers had killed the decedent and claimed that he was lunging at them with a knife. The plaintiff disputed the fact that the decedent lunged at the officers and presented some evidence that would demonstrate that he did not lunge at or attack the officers.

In *Sevier*, the federal district court denied summary judgment on the basis that there was a factual dispute as to whether the

decedent had lunged at the officers which had an impact on the issue of whether the officers had acted unreasonably.

The facts of this case are different from those in *Sevier*, and we do not believe that case to be of any controlling authority on the facts shown. The evidence in this case is uncontradicted that at the time the officers shot the decedent, he was charging at them with a large metal object over his head and had just threatened to kill the officers and indicated that he wanted to die himself. There was no evidence that decedent was not charging at the officers with a weapon at the time he was killed and, therefore, nothing to prevent the court from granting summary judgment on the excessive force claim.

The plaintiff also argues that there is evidence from which it could be concluded that the officers utilized excessive force when pursuing and apprehending the decedent. Although this issue is not briefed in any detail by the appellant, the contention apparently refers to the fact that the officers should have calmed Perryman down, should have used their dog, etc., in order to prevent the show of force. Plaintiff cites *Romero v. Board of Commissioners*, 60 F. 3d 702, 705 (10th Cir. 1995), in support of his argument. However, as we read that decision, the 10th Circuit indicated that the court would not look at the officers' conduct prior to the incident that led to the deadly force in deciding whether the action of the officers was reasonable. The court indicated that "we followed other circuits that have confined the reasonableness inquiry in excessive force cases 'to whether the officer was in danger at the moment of the threat.' " 60 F. 3d at 704-05.

We conclude that the facts before the trial court on the motion for summary judgment conclusively demonstrate that there is no material issue of fact as to the reasonableness of the officers' use of force.

We conclude that the officers' actions must be determined in light of the facts and circumstances which led to those actions. We agree with the United States District Court for the District of Kansas that the " 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *U.S. v. Holloway,*

906 F. Supp. 1437, 1441 (D. Kan. 1995). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." 906 F. Supp. at 1441.

We note that the plaintiff did present a letter from her expert witness which indicated that in his opinion, the actions of the police officers were unreasonable. We do not believe that the trial court or this court is required to find that a material issue of fact exists simply because of an expert's opinion which is not supported by the evidence. The fact that an expert witness may disagree with a police officer's actions does not make those actions unreasonable. *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), *overruled on other grounds Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir. 1997). We hold that the uncontroverted facts in this case show that the officers did not use excessive force. We conclude that, as a matter of law, the opinion of the plaintiff's expert witness was not sufficient to create a question of fact under the circumstances shown in this case.

The plaintiff's expert also indicated that he believed the officers were faced with a situation of "suicide by police," where a mentally disturbed individual attempted to force the police to kill him. The term "suicide by police" is not used in the plaintiff's brief. Plaintiff fails to argue a "suicide by police" theory of recovery. "A point incidentally raised but not argued is deemed abandoned." *McKissick v. Frye*, 255 Kan. 566, 578, 876 P.2d 1371 (1994).

The uncontroverted facts of this case show that at the time he was shot, the decedent was charging at Officer Bledsoe with a large metal object held over his head. The decedent was allowed to get within 8 feet of Officer Bledsoe before he was shot, and there is no question in our mind that the officer properly acted in self-defense and did not use excessive force in firing at the decedent.

## IMMUNITY

There are two types of immunity which could apply to a case of this nature. One is qualified immunity and the other is discretionary immunity. We will briefly discuss both theories.

Qualified immunity is an affirmative defense to a § 1983 excessive force claim. See *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995). Qualified immunity provides an immunity from suit and from liability. 52 F.3d at 1552. The standard for determining whether qualified immunity would apply to law enforcement officers in this case is "whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991). The doctrine of qualified immunity "gives ample room for mistaken judgments" by protecting all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 343, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986). In this case, the officers were entitled to qualified immunity on the § 1983 claim because the uncontradicted evidence in this case showed that the officers' acts of force were reasonable.

Discretionary immunity is defined by K.S.A. 1999 Supp. 75-6104(e). The trial court held that the officers were immune under discretionary immunity.

Discretionary immunity would not apply to an excessive force claim which is based on a negligence theory. The negligence theory in this case was not based on § 1983. Discretionary immunity does not apply to the negligence claim in this case. If, the plaintiff's theory is based on "suicide by police," there are decisions which hold that an officer acts reasonably in using deadly force if he acted in self defense. *Plakas v. Drinski*, 19 F.3d 1143 (7th Cir. 1994); *Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334, 54 Cal. Rptr. 2d 772 (1996).

In this case, the officers were entitled to discretionary immunity from the 1983 claim because the plaintiff was unable to show that any special duty was owed to the decedent.

We affirm the trial court's grant of summary judgment in favor of the defendants in this case.

Affirmed.