No. 89,023

MARVIN L. CANAAN, *Appellant*, v. MICHAEL BARTEE, D. ALLEN BUSH, MARY CURTIS, and KELLY JERNIGAN, *Appellees*.

(72 P.3d 911,

Opinion filed July 18, 2003.

*Patrick A. Hamilton*, of McDowell, Rice, Smith & Gaar, P.C., of Overland Park, argued the cause and was on the brief for appellant.

*Jeff D. Morris*, of Berkowitz, Stanton, Brandt, Williams & Shaw, LLP, of Prairie Village, argued the cause, and *James L. Eisenbrandt*, of the same firm, was with him on the brief for appellee Michael Bartee.

*James D. Griffin*, of Blackwell, Sanders, Peper & Martin, LLP., of Overland Park, was on the brief for appellee D. Allen Bush.

*Thomas Wright*, of Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, of Topeka, was on the brief for appellee Mary Curtis.

*B. Kay Huff*, of Lawrence, was on the brief for appellee Kelly Jernigan.

*Loren F. Snell, Jr.*, assistant attorney general, and *Carla J. Stovall*, attorney general, were on the brief for appellees.

The opinion of the court was delivered by

LUCKERT, J.: This case presents the issue of whether a criminal defendant must obtain postconviction relief in order to maintain a legal malpractice action against his or her defense attorneys. Marvin Canaan, after being convicted of first-degree murder and other crimes and sentenced to life in prison, sued his court-appointed defense attorneys and their legal investigator for legal malpractice. The district court granted summary judgment for the defendants, ruling that Kansas should require exoneration by postconviction relief as a prerequisite to a legal malpractice claim arising out of a criminal proceeding. The district court also denied Canaan the amount of attorney fees he requested after defendants failed to comply with discovery requests. Canaan appealed.

Along with a large majority of courts to address this issue, we adopt the rule that a person convicted in a criminal action must obtain postconviction relief before maintaining an action alleging malpractice against his former criminal defense attorneys. Because Canaan had not obtained such relief, summary judgment was appropriate. We affirm the district court's decision on this issue.

We also affirm the district court's decision to not assess monetary sanctions, other than attorney fees, for defendants' failure to comply with discovery. However, we reverse the district court's decision requiring defendants to pay $1,500 in attorney fees, finding no basis in the record to support the award.

## FACTS

In November 1995, a jury in Johnson County, Kansas, convicted Marvin Canaan of first-degree murder, aggravated robbery, and

aggravated burglary. This court upheld Canaan's convictions in *State v. Canaan*, 265 Kan. 835, 964 P.2d 681 (1998).

On January 5, 1998, Canaan filed a lawsuit against Michael Bartee, Kelly Jernigan, Allen Bush, and Mary Curtis. Bartee and Jernigan, attorneys with the Johnson County Public Defender's Office, were Canaan's trial attorneys. Bush worked as a legal investigator for the same office. Curtis, an attorney with the Appellate Defender's Office, represented Canaan on direct appeal. In his petition entitled "Tort Action for Legal Malpractice," Canaan alleged that he was "provably innocent" and that he had been wrongfully convicted as a direct and proximate result of the defendants' legal malpractice. Canaan listed various causes of action including legal malpractice, intentional misrepresentation, breach of contract, breach of warranty, and fraud, all of which the district court deemed claims for legal malpractice or negligence. Canaan sought damages in excess of $50,000.

On February 14, 2000, the district court entered a default judgment against the defendants as a sanction for their failure to comply with Canaan's discovery requests despite two court orders to do so. Until that time, defendants had been represented by Assistant Attorney General James Coder. As a result of his conduct in this case, this court ordered that Coder be suspended from the practice of law for 1 year. *In re Coder*, 272 Kan. 758, 35 P.3d 853 (2001). Defendants then retained new counsel and filed a motion to set aside the default judgment. The district court denied the motion, but certified its decision for interlocutory appeal.

On appeal, this court reversed the district court's order of default judgment, ruling that the district court abused its discretion in failing to utilize lesser sanctions before entering the ultimate sanction of default judgment and in failing to set aside the default judgment based upon the defendants' excusable neglect. *Canaan v. Bartee*, 272 Kan. 720, Syl. ¶ 9, 35 P.3d 841 (2001).

After that reversal, Canaan filed a motion for monetary sanctions and award of attorney fees and costs. Defendants filed a motion for summary judgment alleging that Canaan's cause of action had not yet accrued because he had not obtained exoneration by postconviction relief, and that his claims were barred by collateral

estoppel because the issue of legal malpractice had already been decided against him in a K.S.A. 60-1507 proceeding.

On March 15, 2002, the district court granted the defendants' motion for summary judgment, agreeing with defendants' argument that exoneration by postconviction relief is an absolute prerequisite to the maintenance of a legal malpractice action arising out of a criminal proceeding. The court stated:

"[W]e agree with defendants that the rule they seek to have applied here is the majority rule. We also agree with them that it is the ruling being adopted by most of the courts that have addressed this question in the recent past. And, most important, we agree that it is the rule that the Kansas appellate courts would and, we think, should apply."

Regarding Canaan's motion for monetary sanctions and attorney fees, the district court assessed an attorney fee award of $1,500 against defendants. That amount was based upon the 10 hours (at $150 per hour) Canaan's attorney spent reviewing the discovery responses finally provided by the defendants after the default judgment.

Canaan and the defendants all filed motions to amend the judgment, which the district court ruled upon in a memorandum decision filed May 23, 2002. Canaan timely appealed. Pursuant to K.S.A. 20-3017, this court granted Canaan's motion to transfer the case from the Court of Appeals.

### Simultaneous K.S.A. 60-1507 Proceedings

While this case was proceeding, Canaan sought postconviction relief by filing a pro se K.S.A. 60-1507 motion. Judge William Cleaver entered an order denying Canaan's motion on March 20, 2001. Canaan appealed but later dismissed his appeal in order to seek a rehearing of his K.S.A. 60-1507 motion at the district court level. On September 3, 2002, after a hearing at which Canaan was allowed to present evidence, Judge Cleaver ruled that there was no basis for Canaan's claim of ineffective assistance of counsel and denied his K.S.A. 60-1507 motion.

*I. Did the District Court Err in Ruling that Exoneration by Postconviction Relief Is an Absolute Prerequisite to Bring-*

*ing a Legal Malpractice Action Arising out of a Criminal Proceeding?*

"Today, the courts generally have accepted the principle that guilt or innocence is relevant to pleading and proving a legal malpractice cause of action." 3 Mallen & Smith, Legal Malpractice § 26.3, p. 810 (5th ed. 2000). Recognizing the trend in case law, defendants argue, and Canaan concedes, that a majority of states addressing the issue have held that successful postconviction relief is a prerequisite to the maintenance of a legal malpractice action arising out of criminal proceedings.

Whether a plaintiff must be exonerated in postconviction proceedings before bringing a legal malpractice action against his criminal defense attorney is an issue of first impression in Kansas. This issue presents an issue of law over which this court's review is unlimited. See *Prime v. Beta Gamma Chapter of Pi Kappa Alpha*, 273 Kan. 828, 830, 47 P.3d 402 (2002).

### Kansas Law Regarding Legal Malpractice

Our appellate courts have stated the following requirements in regard to legal malpractice cases in general: "[I]n order to prevail on a claim of legal malpractice, a plaintiff is required to show (1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage." *Bergstrom v. Noah*, 266 Kan. 847, 874, 974 P.2d 531 (1999). In addition to those four elements, to prove legal malpractice in the handling of litigation, a plaintiff must establish the validity of the underlying claim by showing that it would have resulted in a favorable judgment in the underlying lawsuit had it not been for the attorney's error. *Webb v. Pomeroy*, 8 Kan. App. 2d 246, 249, 655 P.2d 465 (1983).

Only two Kansas cases have dealt with a legal malpractice claim arising out of criminal proceedings: *Rice v. Barker & Bunch, P.C.*, 25 Kan. App. 2d 797, 972 P.2d 786 (1998), and *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112 (1984). In *Rice*, the Court of Appeals addressed a plaintiff's claim against his former attorneys seeking damages for their negligence in defending him on a mur-

der charge. The court upheld the district court's dismissal of plaintiff's claim based upon its application of the rule that "a plaintiff in a legal malpractice case arising out of prior litigation [is required] to show that but for the negligence of the attorney-defendant, the outcome of the underlying lawsuit would have been successful." 25 Kan. App. 2d at 797-98. Because Rice explicitly acknowledged making no such claim, the Court of Appeals did not discuss how this showing would be made or whether it required exoneration.

In *Bowman*, the plaintiff retained the defendant, attorney Doherty, to represent him on a charge of giving a worthless check. Although Doherty spoke with a deputy district attorney about obtaining a continuance of the matter, no continuance was arranged with the district court, and neither Bowman nor Doherty appeared in court on the scheduled date. As a result, Bowman was arrested and charged with aggravated failure to appear. Bowman eventually retained different counsel, and both of his cases "were resolved." 235 Kan. at 871-73.

Bowman then sued Doherty for legal malpractice, and a jury found Doherty to have been 50 percent at fault. Doherty appealed the jury's finding, arguing that Bowman should have been required to put on expert testimony that Doherty deviated from the appropriate standard of care. This court held that expert legal testimony was not required where the attorney's breach of duty or failure to use due care was so clear and obvious that the trier of fact could find a deviation from the appropriate standard for an attorney by relying on its common knowledge. 235 Kan. at 879.

Canaan argues that the adoption of an exoneration rule in Kansas would render *Bowman* meaningless. He contends that the *Bowman* decision makes it clear that attorneys practicing criminal and civil law are subject to the same duty of care, and are implicitly subject to suits for money damages where the attorney's failure to exercise due care results in harm, whether that harm be a wrongful conviction, lost plea bargain opportunity, or an excessive sentence. Defendants respond that, while *Bowman* does set out the appropriate standard of care, it does not address whether exoneration is a precondition to bringing a civil malpractice action.

Defendants correctly point out that the issue of exoneration was not before the *Bowman* court. The court simply did not address whether Bowman was required to show that he had been exonerated of either the bad check charge or the failure to appear charge before bringing his legal malpractice action against Doherty. The opinion indicates Bowman's cases "were resolved" but does not state in what manner they were resolved. Contrary to Canaan's argument, *Bowman* does not stand for the premise that a plaintiff can recover against an attorney for the harm of a wrongful conviction, lost plea bargain opportunity, or excessive sentence. The alleged harm in *Bowman* was the physical and mental suffering plaintiff endured when he was arrested for failure to appear and his loss of freedom when he was jailed for several hours as a result. 235 Kan. at 872. The opinion does not indicate whether Bowman was convicted or sentenced on either charge.

Thus, we are left to decide whether we will apply the exoneration rule in legal malpractice actions in Kansas.

### Decisions in Other States

As previously noted, a majority of courts considering the issue have held that a plaintiff must show exoneration by postconviction relief before he or she can sue defense lawyers: *Levine v. Kling*, 123 F.3d 580, 583 (7th Cir. 1997) (applying Illinois law); *Shaw v. State, Dept. of Admin., PDA*, 816 P.2d 1358, 1360 (Alaska 1991) (*Shaw I*); *Steele v. Kehoe*, 747 So. 2d 931, 933 (Fla. 1999); *Berringer v. Steele*, 133 Md. App. 442, 484, 758 A.2d 574 (2000); *Morgano v. Smith*, 110 Nev. 1025, 1029, 879 P.2d 735 (1994); *Stevens v. Bispham*, 316 Or. 221, 238, 851 P.2d 556 (1993); *Bailey v. Tucker*, 533 Pa. 237, 251, 621 A.2d 108 (1993); *Gibson v. Trant*, 58 S.W.3d 103, 117 (Tenn. 2001); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497-98 (Tex. 1995); and *Adkins v. Dixon*, 253 Va. 275, 281-82, 482 S.E.2d 797 (1997).

Some courts, including many which appear in the first category, hold that a plaintiff must show actual innocence. Cases supporting that proposition include *Levine*, 123 F.3d at 582; *Shaw v. State, Dept. of Admin.*, 861 P.2d 566, 572 (Alaska 1993) (*Shaw II*); *Coscia v. McKenna & Cuneo*, 25 Cal. 4th 1194, 1199, 108 Cal. Rptr. 2d

471, 25 P.3d 670 (2001); *Wiley v. County of San Diego*, 19 Cal. 4th 532, 538, 79 Cal. Rptr. 2d 672, 966 P.2d 983 (1998); *Gomez v. Peters*, 221 Ga. App. 57, 59-60, 470 S.E.2d 692 (1996); *Ray v. Stone*, 952 S.W.2d 220, 224 (Ky. App. 1997); *Glenn v. Aiken*, 409 Mass. 699, 702, 569 N.E.2d 783 (1991); *Rodriguez v. Nielsen*, 259 Neb. 264, 273, 609 N.W.2d 368 (2000); *Morgano*, 110 Nev. at 1029-30; *Carmel v. Lunney*, 70 N.Y.2d 169, 173, 518 N.Y.S.2d 605, 511 N.E.2d 1126 (1987); *Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.*, 143 N.H. 491, 496, 727 A.2d 996 (1999); *Bailey*, 533 Pa. at 250-51; *Peeler*, 909 S.W.2d at 497-98; and *Adkins*, 253 Va. at 282.

## Policy Reasons Behind the Exoneration Rule

Various policies or justifications have been stated for the exoneration rule, including: equitable principles against shifting responsibility for the consequences of the criminal's action; the paradoxical difficulties of awarding damages to a guilty person; theoretical and practical difficulties of proving causation; the potential undermining of the postconviction process if a legal malpractice action overrules the judgments entered in the postconviction proceedings; preserving judicial economy by avoiding relitigation of settled matters; creation of a bright line rule determining when the statute of limitations runs on the malpractice action; availability of alternative postconviction remedies; and the chilling effect on thorough defense lawyering. We find many of these stated reasons persuasive.

Many courts citing equitable principles as a justification for the exoneration rule express concern that a criminal defendant should not be allowed to profit from his or her own illegal conduct and find that it is improper to shift the burden of responsibility for the crime away from the criminal and to the defense attorney. *Wiley*, 19 Cal. 4th at 537-48; *Mahoney*, 727 A.2d at 999; *Peeler*, 909 S.W.2d at 498. Similarly, it is stated that a criminal's conviction and sentence are the direct consequence of the criminal behavior, regardless of any negligence by the attorney. *Wiley*, 19 Cal. 4th at 538.

As a result, allowing recovery of damages without exoneration is contrary to the fundamental principle of tort law that damages are provided only for legally protected legal interests (Restatement [Second] of Torts § 1, comment d, § 7[1] [1965]), "and the liberty of a guilty criminal is not one of them. The guilty criminal may be able to obtain an acquittal if he is skillfully represented, but he has no right to that result . . . ." *Levine*, 123 F.3d at 582. Also regarding damages, the Minnesota Court of Appeals noted that "monetary remedies are inadequate to redress the harm to incarcerated criminal defendants." *Noske v. Friedberg*, 656 N.W.2d 409, 414 (Minn. App. 2003) (restating the policy arguments contained in *Steele v. Kehoe*, 747 So. 2d at 933).

For similar reasons, without exoneration, it cannot be said that the attorney's actions were the proximate cause of the guilty criminal's injury. In other words, because of the antecedent criminal conduct, it cannot be said that "but for" the attorney's conduct the outcome of the criminal proceeding would differ. Thus, "without obtaining relief from the conviction or sentence, the criminal defendant's own actions must be presumed to be the proximate cause of the injury." *Noske*, 656 N.W.2d at 414; *Steele*, 747 So. 2d at 933. See also *Berringer*, 758 A.2d at 597 ("If a potential criminal plaintiff is unsuccessful in obtaining relief from conviction, then it would seem that the attorney's conduct was not the proximate cause of the conviction or injury.").

Recognizing this difficulty, the Tennessee Supreme Court recently noted this was one of the most persuasive reasons supporting the exoneration rule, phrasing the issue as "the perplexing problem of how a criminal defendant could ever prove that his lawyer caused him any legally cognizable injury, and the related problem of how he could prove damages." *Gibson*, 58 S.W.3d at 111.

Also addressing the causation issue, the Texas Supreme Court held that a plaintiff convicted of a criminal offense "may negate the sole proximate cause bar to [his or her] claim for legal malpractice in connection with that conviction only if [he or she has] been exonerated on direct appeal, through postconviction relief, or otherwise." *Peeler*, 909 S.W.2d at 497-98. This is so because it is the illegal conduct of the plaintiff, rather than the attorney's neg-

ligence, that is the cause in fact of any injury flowing from the conviction, unless that conviction has been overturned. 909 S.W.2d at 498.

These problems arise in part because of the different standards of proof in criminal and civil proceedings. As one court has stated the problem, the plaintiff in a legal malpractice action "must prove by a preponderance of the evidence that, but for the negligence of his attorney, the jury could not have found him guilty beyond a reasonable doubt." *Shaw II*, 861 P.2d at 573. The Tennessee Supreme Court believed such a standard would prove unmanageable. *Gibson*, 58 S.W.3d at 111.

"The dilemma of proving causation is not simply a matter of the complexity of the task facing jurors. Rather, it highlights a basic, theoretical distinction between civil and criminal malpractice actions . . . ." *Gibson*, 58 S.W.3d at 111. In a civil malpractice action, the focus is solely upon the attorney's negligence; in a criminal action, however, any harm suffered is principally because of the criminal's antecedent conduct. See *Levine*, 123 F.3d at 582. Thus, the California court in *Wiley* concluded that "it is not at all difficult to defend a different rule, because criminal prosecution takes place in a significantly different procedural context, 'and as a result the elements to sustain a cause of action must likewise differ.'" *Wiley*, 19 Cal. 4th at 540 (quoting *Bailey*, 621 A.2d at 114).

Several courts have also noted that the criminal justice system provides its own safeguards, including postconviction proceedings, to ensure a remedy for criminal defendants who are unjustly convicted. *Noske*, 656 N.W.2d at 414; *Steele*, 747 So. 2d at 933; *Gibson*, 58 S.W.3d at 112-13. It would undermine the postconviction process to allow a legal malpractice action to overrule the judgments entered in those proceedings. *Gibson*, 58 S.W.3d at 112-13.

This argument is related to another justification offered for the exoneration rule, the doctrine of collateral estoppel. Some courts have held that to allow a malpractice claim to proceed would be contrary to the doctrine of collateral estoppel. See *Schlumm v. O'Hagan*, 173 Mich. App. 345, 355, 433 N.W.2d 839 (1988); *Brewer v. Hagemann*, 771 A.2d 1030, 1033 (Me. 2001). As stated in *Griffin v. Goldenhersh*, 323 Ill. App. 3d 398, 405, 752 N.E.2d

1232 (2001): "While a legal malpractice plaintiff must prove his innocence, he is collaterally estopped from arguing facts established and issues decided in a criminal proceeding. . . . Thus, [until] a plaintiff's conviction is overturned, the plaintiff is collaterally estopped from arguing his innocence, leaving him with no cause of action."

Along the same lines, courts have explained that the exoneration rule promotes judicial economy because requiring a plaintiff to obtain postconviction relief will allow the judgment in the postconviction proceeding to have collateral estoppel effect on any later malpractice action. *Shaw I*, 816 P.2d at 1361; *Noske*, 656 N.W.2d at 414; *Steele v. Kehoe*, 747 So. 2d at 933; *Gibson*, 58 S.W.3d at 112-13. Application of the doctrine promotes finality, conserves judicial resources, and prevents inconsistent decisions. *Gibson*, 58 S.W.3d at 113.

Yet another reason cited in support of the exoneration rule is the encouragement of thorough representation of criminal defendants. Defense attorneys should not have to spend time and energy in "defensive" lawyering to avoid potential malpractice claims. Further, it is important to ensure an adequate supply of lawyers willing to undertake the representation of indigent defendants. *Gibson*, 58 S.W.3d at 115-16; *Wiley*, 19 Cal. 4th at 544-45.

### Minority view

Not all courts have adopted the exoneration rule. Courts in Alabama (*Mylar v. Wilkinson*, 435 So. 2d 1237 [Ala. 1983]), Indiana (*Silvers v. Brodeur*, 682 N.E.2d 811, 818 [Ind. App. 1997]), Michigan (*Gebhardt v. O'Rourke*, 444 Mich. 535, 548, 510 N.W.2d 900 [(1994]), New Mexico (*Duncan v. Campbell*, 123 N.M. 181, 186, 936 P.2d 863 [Ct. App. 1997]), and Ohio (*Krahn v. Kinney*, 43 Ohio St. 3d 103, 105, 538 N.E.2d 1058 [1989]) have criticized or rejected the exoneration rule, often in cases where a plaintiff had obtained postconviction relief.

The Missouri Supreme Court in *Jepson v. Stubbs*, 555 S.W.2d 307, 313-14 (Mo. 1977), considered the plaintiff's argument that his cause of action for legal malpractice did not accrue until his conviction was set aside in postconviction proceedings. The court

rejected that argument and found that the statute of limitations had run. Interestingly, despite the Missouri Supreme Court's ruling in *Jepson*, the Missouri Court of Appeals has held that a plaintiff's guilty plea operated to preclude him or her, pursuant to the principle of collateral estoppel, from bringing a legal malpractice suit against a public defender who had represented him or her. *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 503 (Mo. App. 1985). The court distinguished *Jepson* on the basis of whether the facts admitted by the plea were legally sufficient to support the conviction.

Relying upon these cases and particularly the reasoning of *Krahn v. Kinney*, Canaan argues we should reject the exoneration rule.

First, Canaan argues that legal malpractice should be viewed in the same manner as a lost chance for a better recovery in medical malpractice. The *Krahn* court, in considering whether an attorney could be negligent for failing to advise his or her client of a plea offer, stated: "[T]he injury in such a situation 'is not a bungled opportunity for vindication, but a lost opportunity to minimize her criminal record.' " 43 Ohio St. 3d at 106. Building upon this holding, Canaan argues that Krahn's "lost opportunity" to minimize her criminal record is analogous to a plaintiff's loss of chance of a better recovery in a medical malpractice case. See *Delaney v. Cade*, 255 Kan. 199, 873 P.2d 175 (1995). The public policy reason for the loss of chance theory is that, if such claims were barred, doctors would be free of liability for even the grossest malpractice in treating seriously ill or injured patients. Canaan argues the same rationale applies here. A criminal defendant's "preexisting injury" is the charge against him, and the attorney's job is to minimize the consequences of that charge. If an attorney negligently fails to communicate a plea offer or immunity offer, the defendant has been harmed by losing the chance for a better outcome. Preventing the criminal defendant from bringing a malpractice action, therefore, "declares open season on criminal defendants" and allows defense attorneys to remain free of liability for even the grossest malpractice.

This argument does not survive when weighed against the public policy reasons against allowing a criminal defendant to sue his de-

fense attorney as set out by the cases adopting the exoneration rule. As stated in *Peeler*: "The lost opportunity of an admittedly guilty person to escape prosecution because of her lawyer's negligence does not override the public policy against shifting the consequences of a crime to a third party." 909 S.W.2d at 498. Canaan's argument is directly at odds with the idea that a criminal defendant should not be able to shift responsibility onto his or her defense attorney when it is the accused's own criminal behavior that is the direct and proximate cause of the conviction. If accepted, Canaan's position would allow convicted criminals to sue their defense attorneys for damages any time they believed their attorney should have asked for a lesser included instruction, for example. Canaan's argument that defense attorneys would escape liability for malpractice also ignores the fact that all attorneys are subject to disciplinary rules requiring them to represent their clients in a diligent and competent manner.

Canaan also cites *Krahn* to support his argument that the collateral estoppel doctrine does not justify application of the exoneration rule and his argument that collateral estoppel should not apply because an ineffective assistance of counsel claim is a different cause of action from a legal malpractice action. Canaan quotes the following language:

> "An action to vacate a criminal judgment based on ineffective assistance of counsel is not the same as a cause of action for legal malpractice. A claim of ineffective assistance of counsel is based on constitutional guarantees and seeks reversal of a criminal conviction. Legal malpractice is a common law action, grounded in tort, which seeks monetary damages. The proof of either of these two causes of action does not necessarily establish the other." 43 Ohio St. 3d at 107.

However, the *Krahn* court did recognize that collateral estoppel might preclude further litigation of a claim of ineffective assistance of counsel where the issue had been raised and determined in a prior criminal action. The court simply found that the doctrine did not apply on the facts of that case where Krahn's previous motion to vacate her conviction had been denied because she failed to establish that her guilty plea was not knowingly, voluntarily, and intelligently entered. But the resolution of that issue did not de-

termine her malpractice claim which was based upon counsel's failure to communicate a plea bargain offer. 43 Ohio St. 3d at 107.

In a related argument, Canaan contends that postconviction remedies are inadequate to rectify the harm caused by ineffective assistance of counsel. Defendants characterize Canaan's argument as one contending that the standards in civil malpractice and ineffective assistance of counsel claims are vastly different. Defendants respond that the standards are similar and that postconviction remedies are the proper avenue for addressing any lapse in defense counsel's conduct.

In order to obtain reversal of a conviction based upon an ineffective assistance of counsel claim, a criminal defendant must show that "(1) counsel's performance was deficient, which means counsel made errors so serious that counsel's performance was less than that guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense, which requires showing counsel's errors were so serious they deprived defendant of a fair trial. *State v. Rice*, 261 Kan. 567, 598-99, 932 P.2d 981 (1997)." *State v. Thomas*, 26 Kan. App. 2d 728, 730, 993 P.2d 1249 (1999). Regarding the required showing of prejudice, "the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Graham v. State*, 263 Kan. 742, 755, 952 P.2d 1266 (1998).

By contrast, in a legal malpractice action, a plaintiff must show that his attorney failed to use that degree of learning, skill, and care that a reasonably competent lawyer would use in similar circumstances. See *Bowman v. Doherty*, 235 Kan. 870, 878, 686 P.2d 112 (1984). Defendants contend that both types of cases judge attorney performance using the same "reasonable competence" standard. In *Schoonover v. State*, 2 Kan. App. 2d 481, 582 P.2d 292 (1978), the court noted that the "reasonably competent" standard that is applied to claims of ineffective assistance of counsel is shorthand for the standards and rules imposed by the Code of Professional Responsibility. Additionally, it noted that the reasonably competent standard "also, we suppose, establishes a standard for malpractice, since lawyers, like other professionals, are required to

have and exercise the learning and skill ordinarily possessed by members of their profession in the community." 21 Kan. App. 2d at 488.

As to the prejudice aspect of the standard, a plaintiff in a legal malpractice case must show that but for the negligence of the attorney, the outcome of the underlying lawsuit would have been successful. *Webb v. Pomeroy*, 8 Kan. App. 2d 246, 249, 655 P.2d 465 (1983). This is similar to the requirement that a criminal defendant claiming ineffective assistance of counsel show that, but for counsel's errors, the result of the proceeding would have been different. We recognize that certain presumptions do apply in an ineffective assistance of counsel case. See *Baker v. State*, 243 Kan. 1, Syl. ¶ 3, 755 P.2d 493 (1988). This distinction is one of the more troubling aspects of application of the exoneration rule.

However, we believe this is offset by the adequacy of postconviction relief, a remedy unique to the criminal case. 3 Mallen & Smith, Legal Malpractice § 26.3, p. 819 (5th ed. 2000). As stated in *Wiley*:

"In such instances of attorney negligence, postconviction relief will provide what competent representation should have afforded in the first instance: dismissal of the charges, a reduced sentence, an advantageous plea bargain. In the case of trial error, the remedy will be a new trial. If the defendant has in fact committed a crime, the remedy of a new trial or other relief is sufficient reparation in light of the countervailing public policies and considering the purpose and function of constitutional guaranties. [Citations omitted.] Those courts analogizing to civil actions have not considered the implications of postconviction relief for ineffective assistance of counsel. (See *Stevens v. Bispham, supra*, 851 P.2d at p. 565.) Given that availability, it is inimical to sound public policy to afford a civil remedy, which in some cases would provide further boon to defendants already evading just punishment on 'legal technicalities.' " 19 Cal. 4th at 542-43.

Canaan also points out that difficulty in applying the statute of limitations has often led courts to reject the exoneration rule. Application of the statute of limitations in legal malpractice cases is troublesome, regardless of the context in which it arises. We have recognized a variety of theories which determine when a cause of action for legal malpractice accrues and when the statute of limitations begins to run and stated that determination of which theory applies depends upon the facts and circumstances of each case.

*Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986). In *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, 270, 806 P.2d 997 (1991), we recognized that, in some cases, accrual of the cause of action is dependent upon resolution of underlying litigation. Such civil cases would share many of the problems inherent in adoption of the exoneration rule. These problems do not outweigh what we view as the sounder policy and rationale of the exoneration rule.

Finally, Canaan argues that an exoneration rule violates his constitutional right to seek remedy by court action for harm caused by attorney malpractice. He cites Section 18 of the Kansas Constitution Bill of Rights which provides: "All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay." He also cites the Fourteenth Amendment to the United States Constitution Due Process Clause.

Defendants respond that the exoneration rule would not deny criminal defendants access to the courts, and that such defendants may seek postconviction relief pursuant to K.S.A. 60-1507.

A similar argument was raised and rejected in *Peeler v. Hughes & Luce*, 909 S.W.2d at 499. There, the court found that the "open courts" provision of the Texas Constitution, which provides a "remedy by due course of law" just as the Kansas Constitution does, applied only to statutory restrictions of a cognizable common-law cause of action. Because Peeler was not challenging a legislative act, her "open courts" challenge was inapplicable.

Furthermore, the adoption of the exoneration rule could be construed simply as a recognition that a plaintiff has no cause of action until he or she can establish the causation element of his or her claim. In other words, until a plaintiff has been exonerated, his or her criminal conduct and not his or her attorney's negligence is the proximate cause of his or her incarceration. Under this theory, the plaintiff has no cause of action deserving of constitutional protection until exoneration occurs. We find no merit in Canaan's constitutional challenge to the exoneration rule.

### Application to Canaan's Case

After consideration of these authorities, the varying policy justifications, and the shortcomings of the various approaches, we find

the majority view persuasive. We hold that before Canaan may sue his attorneys for legal malpractice he must obtain postconviction relief.

Because of the procedural posture of this case, we need not address whether a plaintiff must prove actual innocence. Canaan, through his action pursuant to K.S.A. 60-1507, attempted to establish ineffective assistance of counsel. His petition was denied. Thus, Canaan has not been successful in obtaining any form of postconviction relief.

### Characterization of Canaan's Claims

Canaan argues that even if we adopt the exoneration rule, the district court erred in granting summary judgment because defendants' motion only sought judgment on his legal malpractice claims, and not his additional claims of negligence, breach of express contract, breach of implied contract, breach of express warranty, breach of implied warranty, intentional misrepresentation, and fraud.

Defendants respond that the district court rejected this argument on the grounds that it was one of the uncontroverted facts alleged by defendants in their summary judgment motion that the court had deemed all of Canaan's various causes of action to be claims for legal malpractice. Canaan admitted that allegation by failing to dispute it in his response to defendants' motion. In so ruling, the district court reiterated its previous ruling that " 'the gravamen of this lawsuit is that his appointed public defenders and their investigator were negligent in providing services to him.' " The court refused to allow Canaan to obtain "a tactical legal advantage by recharacterizing a claim as something beyond its true essence."

Canaan argues that the problem with the district court's decision is that its previous ruling regarding Canaan's various causes of action was implicitly reversed by this court in *Canaan v. Bartee*, 272 Kan. 720, 35 P.3d 841 (2001). Canaan further disagrees with the district court's characterization of his claims.

In *Canaan v. Bartee*, this court did not review the district court's characterization of Canaan's various causes of action as legal mal-

practice claims. Furthermore, the district court's ruling was correct.

"When there is both a contractual relationship and a relationship that gives rise to a legal duty, such as the attorney-client relationship, the breach of that duty and not of the contract itself gives rise to a tort action. . . . If the gravamen of the action is a breach of the legal duty and not of the contract itself, the action is in tort." *Hunt v. KMG Main Hurdman*, 17 Kan. App. 2d 418, Syl. ¶¶ 1, 3, 839 P.2d 45 (1992).

See also *Bonin v. Vannaman*, 261 Kan. 199, 210, 929 P.2d 754 (1996) (while alleged conduct fulfilled all elements of fraud, conduct was also proscribed by duty imposed by law; breach of duty is malpractice and action for damages is one in tort).

Canaan also argues that his legal malpractice claims do not apply to Bush, who is not an attorney. In regard to the argument that his other claims against Bush would remain, regardless of the court's adoption of an exoneration rule, the district court noted that Bush was an agent of the attorney defendants. The district court stated: "There is no reason to allow a claim to proceed against the agent when, for reasons of policy, it is not allowed to proceed against [the] principal."

Canaan offers no legal analysis of why the district court's decision on this issue was in error. When a point is incidentally raised but not argued, it is deemed abandoned. *Campbell v. City of Leavenworth*, 28 Kan. App. 2d 120, 126, 13 P.3d 917 (2000), *rev. denied* 270 Kan. 897 (2001). Furthermore, Canaan's contention is without merit. The Court of Appeals rejected a similar argument in *Rice v. Barker & Bunch, P.C.*, 25 Kan. App. 2d 797, 972 P.2d 786 (1998). In that case, the court reiterated the rule that a plaintiff in a legal malpractice case arising out of prior litigation must show that "but for" the negligence of the attorney defendant, the outcome of the underlying lawsuit would have been successful. The plaintiff argued that the "but for" causation rule applied only to attorneys. The court rejected the argument, finding "no reason for applying a different rule to a person performing investigative work for an attorney in connection with the attorney's representation of the plaintiff simply because that person is not an attorney." 25 Kan. App. 2d at 798.

II. *Did the District Court Abuse its Discretion in Denying Canaan's Motion for a Monetary Sanction Against Assistant Attorney General James Coder and the Kansas Attorney General's Office?*

Canaan argues that the district court abused its discretion in denying his motion for a monetary sanction against defendants' former attorney, James Coder, and his employer, the Kansas Attorney General's Office. Defendants respond that Canaan has failed to establish that the district court abused its discretion.

Although Canaan's initial motion requested a monetary sanction *and* award of attorney fees and costs, at the hearing on the motion Canaan's attorney argued the motion as one requesting an award of attorney fees *as* a monetary sanction. Most of the parties' argument on the motion related to what portion of the attorney fees was actually caused by the defendants' failure to comply with discovery orders.

The district court also treated Canaan's argument as a single request for attorney fees and costs *as* a monetary sanction. The district court granted Canaan's motion in part, by ordering that defendants pay $1,500 in attorney fees.

Canaan then filed a motion to amend the judgment, asking that the district court reconsider its decision and impose a monetary sanction of $100,000, attorney fees of $30,000, and costs of $2,379.96. Although this motion more clearly requested both a monetary sanction and attorney fees and costs, the district court did not treat the issue any differently. It found that Canaan's motion requested the court to reconsider its previous rulings on the amount of sanctions. Because Canaan did not argue there was any intervening change in the law or any new evidence which should be considered, and because the court had already considered and rejected Canaan's "but for" argument regarding causation, the court denied the motion.

*Standard of Review*

This court has reviewed the denial of a K.S.A. 60-259(f) motion to alter and amend under an abuse of discretion standard. *Subway Restaurants, Inc. v. Kessler*, 266 Kan. 433, 441, 970 P.2d 526

(1998). The award of sanctions, including attorney fees, for discovery violations is also reviewed using an abuse of discretion standard. *In re Tax Appeal of American Restaurant Operations*, 264 Kan. 518, 538, 957 P.2d 473 (1998). " 'A court abuses its discretion when it reaches a decision with which no reasonable person could agree. If any reasonable person could agree, the decision must be affirmed.' " 264 Kan. at 538-39 (quoting *City of Arkansas City v. Anderson*, 19 Kan. App. 2d 344, 349, 869 P.2d 244, *rev. denied* 255 Kan. 1000 [1994]).

### Monetary Sanction

K.S.A. 2002 Supp. 60-237, the statute authorizing an award of attorney fees, reads in relevant part:

"(b)(2) If a party . . . fails to obey an order to provide or permit discovery . . . the judge before whom the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . .

"In lieu of any of the foregoing orders or in addition thereto, the judge shall require the party failing to obey the order or the attorney advising such party or both to pay the *reasonable expenses, including attorney fees*, caused by the failure, unless the judge finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added.)

In *Canaan v. Bartee*, this court stated that the sanction should be designed to accomplish the objects of discovery rather than for the purpose of punishment. 272 Kan. at 728. A pure monetary sanction of $100,000, when unrelated to any actual costs incurred as a result of the misconduct, could only serve a punitive purpose. The district court's denial of such a sanction cannot be said to be an abuse of discretion.

Canaan also complains that the district court improperly substituted the disciplinary action against Coder for monetary sanctions. This argument mischaracterizes the district court's ruling. In deciding the amount of attorney fees to award, the district court noted that this court had previously sanctioned Coder for his behavior by suspending him from the practice of law for 1 year. The district court stated that consideration of the disciplinary action was appropriate, and considering both the disciplinary sanction and the monetary sanction of attorney fees in combination, the court con-

cluded: "[A]n appropriate sanction has now been levied." Again, the district court's consideration of the disciplinary sanction does not show an abuse of discretion.

### III. Did the District Court Abuse its Discretion in Awarding Canaan $1,500 in Attorney Fees?

Canaan next argues that the district court abused its discretion in refusing to award the full amount of attorney fees and "case-related expenses" that he requested. Defendants again respond that Canaan has failed to establish that the district court abused its discretion.

The district court noted that K.S.A. 2002 Supp. 60-237(b)(2) authorizes an award of those attorney fees "caused by the failure" of the defendants to obey discovery orders. The court stated:

"Plaintiff seeks recovery of all of the attorney fees and costs incurred since he obtained counsel. Such an award would clearly be improper. First, such an award would require that the defendants pay all of the plaintiff's attorney fees on appeal. Yet the defendants won the appeal and the Kansas Supreme Court assessed the costs of the appeal against the plaintiff. This court certainly cannot reverse the order of a superior court, whether directly or indirectly. Second, there is no real relationship between the failures of the defendants in discovery prior to February 14, 2000 and the majority of the fees incurred by the plaintiff, which were not incurred until after he retained counsel on or about April 15, 2000. Plaintiff argues that 'but for' the failures of the defendants, a default judgment would not have been entered; 'but for' that default judgment, counsel might not have entered the case; 'but for' that default judgment, an appeal would not have been needed; 'but for' that default judgment, most of the fees would not have been incurred. The use of 'but for' reasoning here simply makes no sense. The simple fact is that the entry of the default judgment was an abuse of discretion by this court. No fees the plaintiff incurred as a result of that error by this court should be assessed against the defendants, even though they would not have been incurred 'but for' the discovery failures and the entry of a default judgment."

The district court also noted that the majority of the time Canaan's counsel spent on the case was devoted to handling the appeal before this court and not to discovery matters. The district court did conclude that Canaan was entitled to recover "attorney fees related to reviewing the discovery responses finally provided by the defendants (which were provided after the court's February 14, 2000, decision) and fees related to reasonably following up on

those responses." The district court then awarded $1,500 in attorney fees, based upon the 10 hours (at $150 per hour) of attorney time that fell into that category.

Canaan's primary argument is that the district court reached an erroneous conclusion regarding the amount of attorney fees that were incurred as a direct result of James Coder's failure to comply with discovery orders. Canaan argues that he is entitled to recover attorney fees incurred from the date he retained counsel through December 7, 2001, the date this court entered its opinion in *Canaan v. Bartee*, 272 Kan. 720. Specifically, he contends that any attorney fees incurred during the appeal process were a direct result of Coder's conduct.

Essentially, Canaan is making the same "but for" argument rejected by the district court. Although it is technically true that the appeal would not have been necessary "but for" the default judgment, and the default judgment would not have been entered "but for" Coder's failure to comply with discovery orders, it does not follow that Coder's failure caused the appeal. In essence, the district court found that neither Coder nor the defendants should be held responsible for the district court's abuse of discretion in entering a default judgment. In other words, it was the district court's erroneous entry of the default judgment, and not Coder's misconduct, that was the direct cause of the appeal and any related attorney fees.

The district court's reasoning is sound.

Canaan also asserts that he returned the $1,500 award of attorney fees because he believed that reviewing the discovery documents was not a task "caused by" Coder's failure to obey discovery orders. We agree that there was no basis for the $1,500 amount.

The district court recognized that K.S.A. 2002 Supp. 60-237(b)(2) specifically authorizes only "reasonable expenses, including attorney fees, *caused by the failure*" to obey discovery orders. (Emphasis added.) The district court cited *Metal Marketplace v. United Parcel Service*, 733 F. Supp. 976 (E.D. Pa. 1990), as authority for its conclusion that plaintiff was entitled to recover attorney fees related to reviewing the discovery responses finally provided by defendants and fees related to following up on those

responses. In *Metal Marketplace*, the court applied Federal Rule of Civil Procedure 37(b)(2) in awarding expenses incurred because of defense counsel's trip to the plaintiff's office to locate documents not produced pursuant to a discovery order. The court concluded that

"but for plaintiff's wanton failure to sift through its own records and produce these 70 documents, defense counsel would not have needed to undertake and would not have undertaken this effort. *The court will not require plaintiff to pay for all hours expended by counsel since some of them were spent reviewing and copying the relevant documents. This is something that defense counsel would have done had the documents been timely and properly produced.*" (Emphasis added.) 733 F. Supp. at 982.

The authority cited by the district court does not support its position. According to *Metal Marketplace*, it was not appropriate for the court to award attorney fees for time spent reviewing discovery documents which counsel would have done in any case. During the hearing of this matter, the district court questioned whether the time Canaan's counsel spent "supervising the turnover of those materials and confirming that they had been fully produced" might be "appropriately considered caused by the failure." Although time spent insuring that discovery responses were in full compliance, after a previous failure to comply, might arguably be time spent as a result of that failure, the billing records provided by Canaan's counsel do not contain specific enough information to draw such a conclusion.

The record does not support the district court's finding that Canaan's attorney spent 10 hours reviewing discovery responses. There is only one entry in the attorney's billing records which specifically refers to discovery responses. That entry, made on June 8, 2002, indicates that the attorney spent 3.75 hours reviewing Kelly Jernigan's discovery responses. Only two other entries mention discovery at all, and possibly do not refer to the discovery responses referred to by the district court. An entry on May 3, 2000, shows that the attorney spent .5 hours writing a letter regarding serving discovery and an entry on May 10, 2002, shows that the attorney spent 2.70 hours drafting "discovery requests (RFAs and ROGs)."

The district court did not state which entries in the billing records it considered in arriving at its total of 10 hours, and a review of those records does not reveal any way of reaching that total. Because the district court's ruling awarded attorney fees that were not incurred as a direct result of Coder's failure to comply with discovery orders, and because its total of 10 hours of attorney time cannot be accounted for on this record, the court's decision was an abuse of discretion. See *Locke v. Kansas Fire & Cas. Co.*, 8 Kan. App. 2d 678, 683, 665 P.2d 776 (1983) (abuse of discretion where no evidence in the record to support finding of proper fees and expenses incurred by defendants and $4,517.56 was an amount "far beyond reasonable expenses and fees which may have been caused by plaintiff's failure to attend his deposition").

That still leaves the question of what attorney fees were reasonable in this case, if any. This court found no abuse of discretion in an award of attorney fees and costs related to a motion to compel discovery under K.S.A. 60-237(a) in *In re Tax Appeal of American Restaurant Operations*, 264 Kan. at 539-541. In this case, however, Canaan filed his motions to compel discovery pro se and did not retain counsel until the district court entered a default judgment in his favor in April 2000. Thus, he could have had no attorney fees in connection with any motion to compel. In fact, all of Canaan's unsuccessful attempts to obtain discovery occurred before he retained counsel.

It appears from the record in this case that none of the attorney fees can be said to have been caused by Coder's failure to comply with discovery orders. Perhaps Canaan incurred some expenses himself in filing motions to compel discovery, but no evidence was offered on that point.

Both Canaan and defendants filed motions to amend the judgment, asking that the award of attorney fees be assessed only against Coder and the Attorney General's Office, as originally requested by the defendant. We need not address this issue given

our determination that it was an abuse of discretion to award this amount.

Affirmed in part and reversed in part.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned.