PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/25/99
THOMAS K. KAHN
CLERK

No. 98-8393

D. C. Docket No. 5:95-CV-454-2(DF)


THE AFRICAN METHODIST EPISCOPAL CHURCH, INC.,

Plaintiff-Appellant,

versus

MARIE WARD, Individually and as a Trustee
of Brown Chapel African Methodist Episcopal
Church, WILLIE M. REID, et al.,

Defendants-Appellees.


Appeal from the United States District Court
for the Middle District of Georgia

**(August 25, 1999)**


Before TJOFLAT and BIRCH, Circuit Judges, and BRIGHT*, Senior Circuit
Judge.

---

*Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit,
sitting by designation.

TJOFLAT, Circuit Judge:

This case arises out of a property dispute between the national African Methodist Episcopal Church, Inc. (the "AME Church"), and a Eatonton, Georgia, congregation currently known as Brown's Chapel Community Church ("Brown's Chapel"). For over one hundred years, beginning in the late nineteenth century, Brown's Chapel was part of the AME Church. Then, in July 1994, the membership of Brown's Chapel voted to disassociate from the AME Church and become an independent, unaffiliated congregation. The congregation continued to meet in the building that it had used prior to the disassociation.

Im October 1995, the AME Church filed this suit in the United States District Court for the Middle District of Georgia, seeking a declaratory judgment stating that the AME Church is the legal and equitable owner of the property on which Brown's Chapel is meeting, and an injunction forbidding the Brown's Chapel congregation to cease using the property.[1] The named defendants in the lawsuit were Marie Ward, individually and as a trustee of Brown's Chapel African

---

[1] The complaint also sought damages, but the damages claim was subsequently abandoned.

Methodist Episcopal Church, and Willie M. Reid, individually and as a trustee of Brown's Chapel African Methodist Episcopal Church.[2]

The AME Church then sent each of the defendants (via certified mail) a copy of the complaint, a summons, a "notice of lawsuit" form, and a form asking the defendants to waive formal service of process. See generally Fed. R. Civ. P. 4(d)(2). Each defendant returned the mail, unopened, with the notation "Refused. Do not send anymore." Consequently, the AME Church had to resort to formal service of process, and therefore asked the county sheriff to serve each defendant with a copy of the complaint and summons. Defendant Ward repeatedly refused to answer her door to accept service of process. Consequently, the sheriff served Ms. Ward's niece (Ms. Mary Alice Smith), explained to Ms. Smith the purpose and importance of service of process, and accompanied Ms. Smith to Ms. Ward's house. Ms. Smith was granted admittance to Ms. Ward's house, discussed the lawsuit with Ms. Ward, and then gave the service papers to Ms. Ward. Defendant Reid was personally served by the sheriff in February 1996. The sheriff explained to Ms. Reid the significance of the service papers and her obligation to respond.

_____

[2] Under the internal operating rules of the AME Church, each local congregation holds its property in trust for the AME Church; the trust is managed by a board of trustees selected by the local congregation. Although there is some dispute about the matter, Ms. Ward and Ms. Reid appear to have been the trustees at the time that Brown's Chapel separated from the AME Church.

Neither defendant answered the AME Church's complaint.  (It later came to light that the pastor of Brown's Chapel had instructed the defendants to ignore any legal papers they received from the AME Church.)  Consequently, in January 1997, the clerk of court entered a default as to both defendants.  Then, after a hearing, a default judgment was entered against both defendants, granting the declaratory and injunctive relief requested by the AME Church.

The following month (February 1997), the congregation at Brown's Chapel discovered that it had been locked out of the church building that it had been using, on the basis of the default judgment obtained by the AME Church.  The defendants, along with Brown's Chapel, responded by moving the court to (1) set aside the default and the default judgment, and (2) allow Brown's Chapel to intervene in the lawsuit as a party defendant.  Both motions were granted.  The defendants then moved for summary judgment; the motion was granted.  The AME Church appeals, contending, inter alia, that the district court abused its discretion in setting aside the default and the default judgment.  We agree.

The Federal Rules of Civil Procedure allow a court to set aside a default "for good cause," Fed R. Civ. P. 55(c), and to set aside a default judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect," or for "any other reason justifying relief from the judgment."  Fed. R. Civ. P. 60(b)(1), (6); see also Fed R.

4

Civ. P. 55(c).  Thus, a district court may set aside an entry of default only if the defaulting party can provide a good reason for the district court to do so.  See Gower v. Knight (In re Knight), 833 F.2d 1515, 1516 (11ᵗʰ Cir. 1987).

The appellees contend that the district court properly granted their motion to set aside the default because Brown's Chapel, the alleged title holder of the property in dispute, was not named as a defendant.  It is certainly the case that Brown's Chapel should have been named as a defendant in this lawsuit.  This, however, is not a reason for setting aside the default.  On the contrary, because Brown's Chapel was not named as a defendant, it is not bound by the judgment.  Instead, the default judgment in this case binds only two individuals – Ms. Ward and Ms. Reid.  In other words, the default judgment means only that as between the AME Church and Ms. Ward and Ms. Reid, the AME Church has superior title.[3]   It has no implications for Brown's Chapel; if the AME Church wishes to establish superior title as to Brown's Chapel, it will need to bring a separate lawsuit.[4]

_____

[3] The fact that the lawsuit was brought against Ms. Ward and Ms. Reid in both their individual capacity and "as trustee of Brown's Chapel African Methodist Episcopal Church" is of no moment.  This means only that the AME Church has superior title to these individuals as both individuals and trustees; it means nothing in regard to the Brown's Chapel organization.

[4] Preferably a quiet title action – which is what this lawsuit should have been all along.

The district court, in granting the defendants' motion to set aside the default and the default judgment, provided no reason for granting the motion other than its belief that the case ought to be decided on the merits. This is certainly a noble sentiment; inherent in the adversary system of justice is the idea that each side ought to be heard prior to a court's entry of final judgment. However, that same system requires that the court have the power to compel parties to appear before it. The threat of default (and default judgment) is the court's primary means of compelling defendants in civil cases to appear before the court. If these defaults could be put aside without cause, the threat of default would be meaningless, and courts would lose much of their power to compel participation by civil defendants.

In sum, the defendants have simply failed to provide a satisfactory reason for the district court to set aside the default (or the subsequent default judgment). Consequently, the judgment of the district court is REVERSED and the case is REMANDED with instructions to reinstate the default and the default judgment.

SO ORDERED.