(323 P.3d 872)
No. 108,817

GEORGE MICHAEL GARCIA, *Appellant*, v. CHARLES BALL, *Appellee*.

Opinion filed April 25, 2014.

*John A. Boyd*, of Green, Finch & Covington, Chtd., of Ottawa, for appellant.

*Bill L. Klapper*, of Kansas City, for appellee.

Before BRUNS, P.J., PIERRON and LEBEN, JJ.

LEBEN, J.: George Garcia obtained a default judgment against his former attorney, Charles Ball, when Ball failed to file an answer to Garcia's lawsuit for more than 4 months. Ball then asked the district court to set aside the default judgment, claiming that his failure to answer the suit had been caused by excusable neglect. The district court granted that motion.

Garcia has appealed, contending that the district court abused its discretion because Ball didn't provide any factual basis to support his excusable-neglect claim. We agree that Ball failed to do so, and we conclude that a district court cannot grant relief from judgment based on excusable neglect when the party seeking relief has failed either to explain what facts constituted excusable neglect or to provide any evidence to support that claim. We therefore reverse the district court's judgment setting aside the default judgment previously entered against Ball.

FACTUAL AND PROCEDURAL BACKGROUND

Ball represented Garcia in a criminal case in which Garcia was on probation. In a September 2008 hearing in that case, Garcia stipulated that he had violated his probation. The district court revoked his probation and ordered Garcia to serve his underlying prison sentence.

The district court then entered a written order—approved by Ball—that indicated that Garcia would be subject to postrelease supervision for 12 months after his release from prison. That appears to have been in error; Garcia shouldn't have been subject to postrelease supervision at all. See K.S.A. 22-3716(e). That's important because a person who is on postrelease supervision who commits a new felony goes back to prison for whatever remains of the postrelease-supervision period. See K.S.A. 75-5217(c).

Within 2 weeks of the probation-revocation hearing, the Kansas Department of Corrections sent a letter to the sentencing judge, with a copy to Ball, stating that it did not appear that a postrelease-supervision period should have been ordered. Nevertheless, the Department said that it would comply with the court's order.

After Garcia's release from prison—and during the postrelease-supervision period—he committed a burglary. Because Garcia committed the crime while on postrelease supervision, he was covered by a special sentencing rule that required that he serve the remaining portion of his postrelease-supervision term in prison. See K.A.R. 44-6-115c(c).

Garcia says that he contacted Ball, who agreed to have the error in the order requiring postrelease supervision corrected, but that Ball never took any action. Garcia filed a motion on his own in May 2010 seeking to correct the error. Several months later, in February 2011, the district court entered a corrected journal entry saying that Garcia shouldn't have been subject to postrelease supervision. According to Garcia, he was released from prison about a week after the court adopted its corrected order.

Garcia alleges that he spent more than 9 months in prison due to Ball's failure to get the order corrected. Based on that allegation, Garcia brought a legal-malpractice claim against Ball. Garcia filed

his petition for damages on May 5, 2011. Docket entries in the district court's file show that the summons and petition were served on Ball on May 17, 2011. Under K.S.A. 2013 Supp. 60-212(a), Ball had to file an answer within 21 days, which would have been June 7, 2011. The district court's docket entries show that a clerk's extension of time was entered June 7, 2011 (clerks may grant a 14-day extension), and an additional order extending the answer date was apparently entered June 20, 2011. That document is not in the record on appeal, so we don't know what it said.

Garcia's attorney said he never received copies of any orders extending the time for Ball to answer, and Garcia filed a motion for default judgment on July 18, 2011. That motion noted that Ball had been served on May 17 and hadn't filed an answer. Garcia sought judgment for $522,400.

Garcia's May 2011 petition had sought damages "in excess of $75,000." That's because Kansas law doesn't allow a petition to state a specific amount above $75,000. See K.S.A. 2013 Supp. 60-208(a). In the event of a default, K.S.A. 2013 Supp. 60-254(c) allows the plaintiff to send notice to the defendant of the amount sought by default judgment. On July 7, 2011, Garcia sent a notice to Ball that Garcia's "demand for judgment" would be for $522,400. On July 18, 2011, Garcia filed a motion for default judgment in that amount; Garcia's attorney mailed a copy of that motion to Ball.

On October 14, 2011, since Ball still had not filed an answer, the district court granted default judgment in Garcia's favor for $522,400. A month later, on November 14, 2011, Ball filed a motion to set aside the default judgment. Ball's motion sought relief under K.S.A. 60-260(b)(1) ("[m]istake, inadvertence, surprise or excusable neglect") and (b)(6) ("any other reason that justifies relief").

The court held a hearing on that motion on November 14, 2012. Ball's attorney candidly conceded that Ball had "simply failed" to respond to the suit:

"If there is an excuse for him not filing an answer, Your Honor, he simply failed to, neglected to do so. And I know it's not a good excuse, but the truth of the

matter. What happened, he should have taken care of it and should have got an answer on file. He did not do so."

Ball did not attend the hearing. After Garcia's attorney argued that "[t]he statements of his counsel that he simply neglected to answer, I think failed to meet the burden of [showing] excusable neglect," Ball's attorney offered a "guess" as to why Ball had failed to respond in a timely manner to the lawsuit:

"[M]y guess, Your Honor, as most attorneys do tell you, [is] that he was busy with his practice, and that he overlooked this particular matter. This despite the fact . . . he should have taken care of things. I don't think there's any dispute about that."

Garcia's attorney closed by arguing that since Ball had failed to provide any evidence supporting his claim of excusable neglect, his motion to set aside the default judgment should be denied:

"Apparently, he has not chosen to grace us with his presence to offer any evidence as to the nature of his neglect to respond to this lawsuit as the rules require, Judge. What they are asking you to do is to say that the rules don't apply to Mr. Ball, because he's an attorney who is busy and can't respond to the lawsuit. That can't be the rule, Judge. If anything, an attorney should have a higher burden to prove neglect, because they are an attorney, they practice law, and they are aware of deadlines. And there are severe consequences that can attach if deadlines are not met. So there's no evidence to substantiate their motion. We ask the Court to deny it."

The district court then granted the motion to set aside the default. The court cited a general preference for avoiding default judgments as the primary basis for its ruling:

"Well, due to the extent that the law dislikes defaults, and because Mr. Ball has a [potentially] meritorious [defense], the fact that I personally don't like defaults, in matters of this nature, I'm going to grant the motion. Default judgment is set aside."

Ball then filed an answer, and the lawsuit proceeded. The district court eventually dismissed it, concluding that Garcia couldn't sue his criminal-defense attorney unless Garcia first was exonerated for the underlying offense. See *Canaan v. Bartee*, 276 Kan. 116, Syl. ¶ 2, 72 P.3d 911 (2003).

Garcia has appealed to this court. He challenges both the district court's decision to set aside the default judgment and its later ruling

that his suit was barred by the exoneration rule announced in *Canaan*. Because we have found the default-judgment issue determinative of the appeal, we do not address the applicability of the exoneration rule to this case.

## ANALYSIS

Courts and lawsuits are governed by rules, so we must start by identifying those applicable to our case. The primary rule at issue here is part of the Kansas Code of Civil Procedure, K.S.A. 60-260. Garcia had obtained judgment against Ball in October 2011. Ball's November 2011 motion to set aside the default relied upon two subsections of K.S.A. 60-260(b). Under those provisions, the court "may relieve a party . . . from a final judgment" based on "[m]istake, inadvertence, surprise or excusable neglect," K.S.A. 60-260(b)(1), or based upon "any other reason justifying relief," K.S.A. 60-260(b)(6).

Ball doesn't mention subsection (b)(6) on appeal, and his argument both here and in the district court was that his failure should be excused based on excusable neglect. In addition, when a party's claim for relief is covered by subsection (b)(1), the catch-all provision of subsection (b)(6) does not apply: It is available only for types of cases different from those specifically provided for. See *In re Marriage of Leedy*, 279 Kan. 311, Syl. ¶ 4, 109 P.3d 1130 (2005); *Subway Restaurants, Inc. v. Kessler*, 273 Kan. 969, 978, 46 P.3d 1113 (2002). So we will focus on whether Ball qualified for relief based on excusable neglect under K.S.A. 60-260(b)(1).

We must also identify one other rule up front—our standard of review. A district court's ruling on a motion for relief from judgment is reviewed only for abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 937, 296 P.3d 1106 (2013); *Leedy*, 279 Kan. at 314. The district court abuses its discretion if its decision is based on an error of fact or law or where no reasonable person would agree with the court's discretionary judgment call (here, whether to set aside the default judgment). *Critchfield Physical Therapy v. The Taranto Group, Inc.*, 293 Kan. 285, 292, 263 P.3d 767 (2011). A district court's decision is based on an error of fact where there's a lack of substantial

evidence to support a factual finding necessary to the court's exercise of discretion. 293 Kan. at 292.

Given these standards, we must reverse the district court: Ball provided no reason—let alone evidence—to support his claim of excusable neglect, and the existence of such a reason and some evidence supporting it is a necessary prerequisite to setting aside a judgment based on an excusable-neglect claim.

Ball's attorney offered only a "guess" about why Ball hadn't responded to the suit—"that he was busy with his practice, and that he overlooked this particular matter." Ball's attorney offered no factual statement about what actually happened, Ball offered no affidavit, and Ball chose not to attend the district court hearing.

Kansas courts have long followed federal precedents applying the parallel Federal Rules of Civil Procedure, *e.g.*, *Lackey v. Medora Township*, 194 Kan. 794, 796, 401 P.2d 911 (1965), and at least two federal appellate court decisions have reversed district court orders setting aside a default judgment where there was no evidence presented to support the decision. *African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202 (11th Cir. 1999) ("[A] district court may set aside an entry of default only if the defaulting party can provide a good reason for the district court to do so."); *Western Union Telegraph Co. v. Dismang*, 106 F.2d 362, 364 (10th Cir. 1939) ("It is an abuse of discretion . . . to open or vacate a judgment where the moving party shows no legal ground therefor or offers no excuse for his own negligence or default."); see also *In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("[T]he setting aside of a default judgment where no good reason has been offered for the default constitutes an abuse of discretion."); 12 Moore's Federal Practice § 60.41[1][c], at 60-100 to -101 (3d ed. 2012) (noting that the failure to meet a court deadline without some understandable reason for the failure is not excusable neglect).

No Kansas appellate decision has addressed this specific question (whether to reverse a district court for granting relief from a default judgment), but Kansas Supreme Court precedents strongly support the result these federal courts reached. In the related, but converse, situation, in which district courts have refused to set aside

default judgments, our Supreme Court has affirmed when the moving party had made only a minimal showing of excusable neglect. *E.g.*, *State ex rel. Stovall v. Alivio*, 275 Kan. 169, 171-72, 174, 61 P.3d 687 (2003); *Tyler v. Cowen Construction, Inc.*, 216 Kan. 401, 407-09, 532 P.2d 1276 (1975); *Lackey*, 194 Kan. at 796-97. And in one of those cases, *Lackey*, the Kansas court cited with approval the Tenth Circuit's decision in *Western Union Telegraph Co.*, one of the two cases we have cited that reversed a district court under the abuse-of-discretion standard when the district court granted relief from judgment but the moving party hadn't provided a factual basis to do so. *Lackey*, 194 Kan. at 796-97 (citing *Western Union Telegraph Co.*, 106 F.2d 362).

The *Lackey* case arose in an unusual procedural manner, as the plaintiff there sought to set aside a judgment dismissing her petition for failing to state a valid claim for relief. After judgment, the plaintiff sought relief under K.S.A. 60-260(b)(1) based on mistake or inadvertence for having misstated a key fact in the petition. The court affirmed the denial of relief, noting that the plaintiff had not provided any reason for the mistake and citing to *Western Union Telegraph Co.*:

"If mistake or inadvertency forms the basis for a motion to set aside a judgment, the movant should make some showing as to why he was justified in failing to avoid the mistake or inadvertency. See *Western Union Telegraph Co. v. Dismang*, 106 F.2d 362; [other citations omitted]. . . .

"Appellant makes no explanation as to why the mistake or inadvertency occurred." 194 Kan. at 796.

The *Lackey* court also referred in its syllabus paragraph to the need to show a basis for the claim made under K.S.A. 60-260(b)(1), which in that case was mistake or inadvertence: "[I]f mistake or inadvertency forms the basis for the motion, the movant should make some showing as to why he was justified in failing to avoid the mistake or inadvertency." 194 Kan. 794, Syl.

The district court's stated basis for its decision was a dislike of default judgments. We agree, of course, that deciding lawsuits on their merits is preferable to deciding by default. *E.g., Tyler*, 216 Kan. 401, Syl. ¶ 2. But that is not the only policy we must consider. We also have an interest in making sure that parties comply with

the summons issued to them and appear before the court to adjudicate a dispute once a lawsuit has been filed:

"[I]nherent in the adversary system of justice is the idea that each side ought to be heard prior to a court's entry of final judgment. However, that same system requires that the court have the power to compel parties to appear before it. The threat of default (and default judgment) is the court's primary means of compelling defendants in civil cases to appear before the court. If these defaults could be put aside without cause, the threat of a default would be meaningless, and courts would lose much of their power to compel participation by civil defendants." *African Methodist Episcopal Church, Inc.*, 185 F.3d at 1203.

Accord *Wilson v. Miller*, 198 Kan. 321, 322, 424 P.2d 271 (1967) ("[O]ur entire judicial process for trial of civil controversies would be destroyed if a court's summons or other process were permitted to be treated with neglectful indifference."). If a defendant could get a default judgment set aside without providing any excuse and without any evidence to support it, then defendants might be well advised never to answer a suit until a default judgment has been entered. And since motions under K.S.A. 60-260(b)(1) may be made for 1 year after the entry of judgment, defendants could build substantial delay into any lawsuit just by refusing to appear in response to the summons and delaying the motion to set aside the default as long as possible.

For a legal system to function, rules must be followed. We not only have a rule telling us when a default judgment may be entered, we also have one telling us when a default judgment may be set aside. Ball filed his motion under K.S.A. 60-260(b) claiming excusable neglect, and he had the burden to plead and prove that claim. *Canaan*, 272 Kan. at 733. We cannot allow a defendant to obtain relief based on excusable neglect without either stating what the neglect was or providing any evidentiary basis to support the claim. Ball failed to make that showing. Even if we assume his attorney's "guess" was correct—that Ball "was just busy with his practice"—that would not constitute excusable neglect. See Allton & Broomes, *What Constitutes Excusable Neglect?*, 77 J.K.B.A. 6, 23 & n.52 (May 2008) ("[B]usy schedules, heavy caseloads, and the burden of operating a law practice generally will not support a finding of excusable neglect.") (citing cases).

Perhaps one might argue, although Ball did not, that Ball's inaction might qualify as "inadvertence" under K.S.A. 60-260(b)(1). But our Supreme Court has said that "[i]nadvertent neglect . . . is not to be equated with excusable neglect." *Tyler*, 216 Kan. at 407; see also *Alivio*, 275 Kan. at 173 (noting that a judgment may not be set aside where the default was the result of inexcusable neglect or a willful act). Thus, in *Tyler*, the court said that an attorney had not provided a viable excuse under K.S.A. 60-260(b)(1)—even though an affidavit had been provided stating that the lawsuit papers had "inadvertently not been directed to [the lawyer's] attention" because of "reduced office personnel during the holiday season" after the papers had been served on the defendant (a business) on December 10. The court noted that there was no explanation of what employees "were gone for 29 days" after December 10. 216 Kan. at 407. As the court put it, "There is no explanation!" 216 Kan. at 407. Merely stating that a lawsuit wasn't answered—without an explanation—does not show excusable inadvertence any more than it shows excusable neglect.

The summons and petition were served on Ball on May 17, 2011. Garcia sent notice to Ball that Garcia sought more than $500,000 in damages on July 7, and Garcia notified Ball on July 18 that Garcia was seeking default judgment. Ball offered no explanation for his failure to file a timely answer to the lawsuit. In these circumstances, the district court abused its discretion by granting Ball's motion for relief from the judgment based on excusable neglect.

The district court's judgment is reversed.

* * *

PIERRON, J., dissenting: I respectfully dissent. It is obvious the defendant has pushed the envelope on the issue of whether the trial court has the discretion, under these facts, to set aside the default judgment of $522,400. While the majority presents strong reasons for a finding that the setting aside of the default judgment was an abuse of discretion, I dissent. I agree with the majority that there was no excusable neglect here. However, this would allow us to examine other reasons if present.

Setting aside a judge's finding that a default judgment should be set aside is rare. In fact, such a happening does not appear in the pages of our appellate decisions. It is true that some cases can be found in federal courts as set out by the majority.

"Inadvertence" is one reason listed in K.S.A. 60-260(b)(1) that a default judgment can be set aside. "Inadvertence" is defined in part in Black's Law Dictionary 903 (4th ed. 1968) as: "Heedlessness; lack of attention; want of care; carelessness; failure of a person to pay careful and prudent attention to the progress of a negotiation or a proceeding in court by which his rights may be affected."

K.S.A. 60-260(b)(6) allows for relief from a final judgment "[for] any other reason that justifies relief"—a "catch all" provision which is not as limited as the other five subsections.

These two provisions could allow relief under the present circumstances if granted by the trial court within its reasonable discretion. Although a difficult decision, I believe the judgment below is defensible. " 'What is excusable neglect and what is inexcusable neglect can hardly be determined in a vacuum. . . . The recent cases applying, Rule 60(b) have uniformly held that it must be given a liberal construction. Matters involving large sums should not be determined by default judgments if it can reasonably be avoided. (Citation omitted.) Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits. (Citations omitted.) Since the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments.' " *Montez v. Tonkawa Vill. Apartments*, 215 Kan. 59, 63, 523 P.2d 351, 354-55 (1974) (quoting *Tozer v. Charles A. Krause Mill. Co.*, 189 F.2d 242 [3d Cir. 1951]).

The law much prefers matters to be settled on their merits, especially when substantial amounts are involved. Although very tardy in responding to this lawsuit, the defendant has caused the plaintiff no prejudice and is ready to proceed. The civil justice system of this state will not come crashing down if a trial judges uses his or her discretion under facts like these to allow a case to be handled in regular course.

This is the kind of case that allows the trial court in its discretion to set aside a default. Given the size of the judgment and our scope of review, we should not reverse.